## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re: | Bankruptcy Case No. 24-13440 TBM |
| CLAIRE-MARIE BENDER, | Chapter 7 |
| Debtor. | |
| | |
| KAPITUS SERVICING INC., as Servicing Agent for Kapitus LLC, | |
| Plaintiff, | Adv. Pro. No. 24-1279 TBM |
| v. | |
| CLAIRE-MARIE BENDER, | |
| Defendant. | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I.       Introduction.

Debtor-Defendant, Claire Marie Bender (the "Debtor"), filed for protection under Chapter 7 of the Bankruptcy Code.[1]  Thereafter, one of the Debtor's creditors, Kapitus Servicing, Inc., as Servicing Agent for Kapitus LLC ("Kapitus"), commenced this Adversary Proceeding against the Debtor by filing a "Complaint to Determine Nondischargeability of Debt Owed to Kapitus Servicing Inc." (Docket No. 1, the "Complaint").[2]  Through the Complaint, Kapitus requested that an alleged debt of approximately $237,309.59 be declared nondischargeable under Sections 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).

Subsequently, the Debtor moved to dismiss Kapitus' Section 523(a)(2)(A) and (a)(4) claims for failure "to state a claim upon which relief may be granted" under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012.  (Docket No. 13.)

---

[1]      All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[2]      Unless otherwise indicated, the Court will refer to particular documents contained in the CM/ECF docket for this Adversary Proceeding, using the convention: "Docket No. ___ ."  Similarly, the Court will refer to a particular document filed in the CM/ECF docket for the Debtor's Main Bankruptcy Case, *In re Bender*, Case No. 24-13440 TBM (Bankr. D. Colo.) using the convention: "Main Case Docket No. ___ ."

Kapitus contested dismissal.  (Docket No. 17.)  Thereafter, the Court entered its "Order on Motion to Dismiss."  (Docket No. 19, the "Dismissal Order.")  In the Dismissal Order, the Court identified and categorized the various written and oral statements which Kapitus asserted were false and actionable: (1) "Solvency Statements"; (2) "Business and Financial Conditions Statements"; (3) "Pending Litigation Statements"; (4) "Arrears Statements"; and (5) "Use Statements."  (Docket No. 19 at 17-19.)[3]  In the Dismissal Order, the Court dismissed the portion of the Section 523(a)(2)(A) claim based on the Solvency Statements, Business and Financial Conditions Statements, Pending Litigation Statements, and Arrears Statements.  However, the Court denied dismissal of the portion of the Section 523(a)(2)(A) claim based on the Use Statements.  The Court dismissed the Section 523(a)(4) claim in its entirety.

The Debtor answered the Complaint.  Then, recently, the Debtor filed "Defendant's Motion for Summary Judgment Pursuant to F.R.C.P. 56" (Docket No. 34, the "MSJ"), seeking entry of summary judgment on all remaining claims (*i.e.,* the portion of the Section 523(a)(2)(A) claim based on the Use Statements, the Section 523(a)(2)(B) claim, and the Section 523(a)(6) claim).  Kapitus filed a "Response in Opposition to Defendant's Motion for Summary Judgment or, Alternatively, Relief Pursuant to Rule 56(d)" (Docket No. 35, the "MSJ Response") contesting the MSJ or, alternatively, seeking relief under Fed. R. Civ. P. 56(d), made applicable by Fed. R. Bankr. P. 7056, to defer consideration of the MSJ pending the completion of discovery.  The Debtor filed a Reply.  (Docket No. 36, the "MSJ Reply.")

Having considered the MSJ, MSJ Response, and MSJ Reply, the Court: (1) denies summary judgment in favor of the Debtor on the remaining portion of the Section 523(a)(2)(A) claim based on the Use Statements; (2) denies summary judgment in favor of the Debtor on the portion of the Section 523(a)(2)(B) claim based on the Solvency Statements, Business and Financial Conditions Statements, Pending Litigation Statements and Arrears Statements; (3) grants summary judgment in favor of the Debtor on the portion of the Section 523(a)(2)(B) claim based on the Use Statements; and (4) denies summary judgment in favor of the Debtor on the 523(a)(6) claim.

## II.      Jurisdiction and Venue.

The Court has jurisdiction to enter final judgment in this nondischargeability dispute pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate); and (b)(2)(I) (determinations as to the dischargeability of particular debts).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.  Kapitus and the Debtor agree that this Court has jurisdiction to enter judgment and that venue is proper in the Court.

---

[3]      The Court incorporates all the defined terms identified in the Dismissal Order including: the Solvency Statements, Business and Financial Conditions Statements, Pending Litigation Statements, Arrears Statements, and Use Statements.

## III.    Procedural Background.[4]

### A.    The Debtor's Bankruptcy Petition.

The Debtor filed for protection under Chapter 7 of the Bankruptcy Code on June 20, 2024, in the case captioned: *In re Claire-Marie Bender*, Case No. 24-13440 (Bankr. D. Colo.) (the "Main Case").  In her Petition, the Debtor indicated that she was a former member of "Claire-Marie Ficsor, DMD, PLLC" (the "Merchant"), which entity she also identified as a co-debtor on Schedule H.  (Main Case Docket No. 1.)

### B.    The Adversary Proceeding.

On December 16, 2024, Kapitus commenced this Adversary Proceeding by filing the Complaint.  In the Complaint, Kapitus asserted that the Debtor is indebted to Kapitus for damages of $237,309.59 arising from two agreements the Debtor executed on behalf of the Merchant: (1) a "Forward Purchase Agreement (Fixed ACH Delivery)," which the Debtor personally guaranteed (the "FPA"); and (2) "Representations and Acknowledgments – Funding is Contingent Upon your Competition and Review by Kapitus" (the "Representations and Acknowledgements") (together, the "Agreements"). Per the Agreements, the Merchant allegedly sold certain Receivables to Kapitus in exchange for cash consideration.

Kapitus alleged in the Complaint that such debt should be determined to be nondischargeable pursuant to Section 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).  The Debtor responded by filing "Defendant's Motion to Dismiss First and Third Claims for Relief Pursuant to Rule 12(b), Fed. R. Civ. P."  (Docket No. 13, the "Motion to Dismiss"). After reviewing the response filed by Kapitus (Docket No. 17) and the Reply submitted by the Debtor (Docket No. 18), the Court entered the Dismissal Order in which it determined:

> [T]he allegations made in the Complaint support a claim to relief under Section 523(a)(2)(A) that is plausible on its face only insofar as such allegations relate to the Debtor's alleged misrepresentations in the Use Statements.  However, to the extent that Kapitus bases its Section 523(a)(2)(A) claim on the Solvency Statements, the Business and Financial Conditions Statements, the Arrears Statements, and the Pending Litigation Statements, the facts also fail to state a claim under Section 523(a)(2)(A) that is plausible on its face. The allegations in the Complaint also fail to support a claim under Section 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity, for larceny, or for embezzlement.

(Docket No. 19 at 30.)  The Court, therefore, granted the Motion to Dismiss, in part, and denied it, in part.  Specifically, the Court dismissed Kapitus' Section 523(a)(4) claim in

---

[4]    The Court takes judicial notice of the docket in this Adversary Proceeding as well as the Main Case.  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket and the facts that are part of public records).

its entirety and dismissed the 523(a)(2)(A) claim to the extent that the claim was predicated on the Solvency Statements, the Business and Financial Conditions Statements, the Arrears Statements, and the Pending Litigation Statements, because such statements were statements respecting the Debtor's or Merchant's financial condition and thus could not form the basis for a claim under Section 523(a)(2)(A).  The Court, however, declined to dismiss the Section 523(a)(2)(A) claim to the extent that it was predicated on the Use Statements, because such statements were not statements respecting financial condition, but rather promises of future performance.

On July 10, 2025, the Debtor filed her Answer, admitting and/or denying certain allegations in the Complaint and setting forth various affirmative defenses to Kapitus' claims.  On August 14, 2025, the Court held an initial pretrial conference at which, among other things, it set a trial date (May 5, 2026) and established various pre-trial deadlines.  (Docket Nos. 27 and 31.)

On October 30, 2025, the Debtor filed the MSJ.  The Debtor set forth the facts which it asserted should be deemed uncontested and attached the "Affidavit of Claire-Marie Bender in Support of Defendant's Motion for Summary Judgment."  (Docket No. 34-1, the "Bender Affidavit.")  Based on such alleged uncontested facts, the Debtor asserted that the Court should grant summary judgment pursuant to Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056 on the remaining portion of the Section 523(a)(2)(A) claim (to establish nondischargeability on the basis that the Use Statements were false representations).  The Debtor also sought summary judgment on two claims that were not addressed in the Dismissal Order: Kapitus' Section 523(a)(2)(B) claim and Section 523(a)(6) claim.

Kapitus filed the MSJ Response on November 13, 2025.  Therein, Kapitus admitted that some of the facts identified as "uncontested facts" by the Debtor were, indeed, uncontested, but denied that the other "uncontested facts" could be properly viewed as such.  In support of its denials, Kapitus submitted two affidavits: the "Affidavit of David Wolfson" (Docket No. 35-1 at 2-8, the "Wolfson Affidavit"); and the "Affidavit of Scott Brown" (Docket No. 35-1 at 10-12 (the "Brown Affidavit").  Kapitus also submitted Exhibits C through V, all of which are referenced in the Wolfson and Brown Affidavits. Kapitus asserted that the Affidavits and the cited exhibits demonstrate that there are contested material facts such that the Court should not enter summary judgment on such claims.  Kapitus also argued that, to the extent that the Affidavits and exhibits do not raise issues of material fact, the Court should allow discovery to proceed and give Kapitus the opportunity to present additional information in support of its opposition to the MSJ per Fed. R. Civ. P. 56(d).  Finally, Kapitus also presented its own counter-statement of 50 "additional facts which are material and disputed."

## IV.  Legal Standard Governing Motions for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, as incorporated herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure.  Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party bears the initial burden of identifying the basis for its motion and designating those portions of the record which it believes entitles it to judgment.  Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Instead:

> [T]he nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant . . . .  To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted).  *See also Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (discussing burdens and citing *Celotex Corp. v. Catrett*); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1181 (10th Cir. 2013) (nonmoving party has the affirmative duty of coming forward with evidence supporting his claim at summary judgment).

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims or defenses."  *Celotex Corp.*, 477 U.S. at 323-24.  Therefore, unsupported, conclusory allegations will not create an issue of fact, and the non-moving party must do more than provide its subjective interpretation of the evidence.  *Tran v. Sonic Indus. Servs.*, Inc., 490 Fed. Appx. 115, 117-118 (10th Cir. 2012) ("Summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.") (citing *Rohrbaugh v. Celotex Corp.*, 53 F3.d 1181, 1183 (10th Cir. 1995)).  "A party cannot rely entirely on pleadings, but must present significant probative evidence to support its position."  *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "If the nonmoving party fails to make a sufficient showing on an essential element with respect to which [it] has the burden of proof, judgment as a matter of law is appropriate."  *Id.*  However, "when the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper."  *C.L. Frates & Co. v. Westchester Fire Ins. Co.*, 728 F.3d 1187, 1189 (10th Cir. 2013).

Importantly, the MSJ is a defensive motion for summary judgment.  Such a motion "places the burden on the movant [the defendant] to show 'there is an absence of evidence to support the nonmoving party's case.'"  *In re Bailey*, 2000 WL 1728371, at *2 (Bankr. D. Colo. Oct. 12, 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. at 325).  In reviewing a motion for summary judgment, the Court must view the facts and evidence in the light most favorable to the nonmoving party.  *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).

### V.  <u>Procedural Requirements for Summary Judgment.</u>

5

The critical first step in adjudicating a motion for summary judgment is to identify the undisputed facts.  Only then can the Court apply the law to the facts and reach a legal conclusion.  Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

Procedural rules dictate how the alleged undisputed facts are to be presented and challenged.  Fed. R. Civ. P. 56(c) governs the facts alleged by the movant or challenged by the non-movant:

> (c)  Procedures.
>
> (1)  Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Then, Fed. R. Civ. P. 56 provides the consequences for "failing to properly support or address a fact":

> (e)  Failing to Properly Support or Address a Fact.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

The Bankruptcy Court for the District of Colorado supplemented the Federal Rules of Civil Procedure by enacting its Local Bankruptcy Rules. L.B.R. 7056-1 governs summary judgment motions filed in the Bankruptcy Court for the District of Colorado and provides:

(a) Motion and Memorandum in Support. Any motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must include:

(1) a statement of the burden of proof;

(2) the elements of the claim(s) that must be proved to prevail on the claim(s);

(3) a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried;

(4) a statement or calculation of damages, if any; and

(5) any and all citations of law or legal argument in support of judgment as a matter of law.

The counterpoint is L.B.R. 7056-1(b), which governs oppositions to motions for summary judgment:

(b) Response and Memorandum in Opposition. Responses in opposition must include:

(1) any competing statements concerning the burden of proof, including burden shifting, together with legal authority supporting such statements;

(2) any defenses to the elements of the claim(s) that must be proved to defeat such claim(s);

(3) a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried;

(4) a short and concise statement, in numbered paragraphs containing only one fact, of any

7

additional facts as to which the opposing party contends are material and disputed;

(5) a statement or calculation of damages, if any; and

(6) any and all citations of law or legal argument in opposition to judgment as a matter of law.

Each alleged fact or contravention of fact (whether by the movant or the non-movant) must be properly supported.  L.B.R. 7056-1(c) tells how:

(c)    Supporting Evidence.  Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record.   Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated, which are admissible in evidence. Where facts referred to in an affidavit are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached with the relevant passages marked or highlighted.

L.B.R. 7056-1(d) states what happens if a non-movant does not properly contravene alleged undisputed facts:

(d)    Admission of Facts.  Each numbered paragraph in the statement of material facts served by the moving party is deemed admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement served by the opposing party.

And L.B.R. 7056-1(g) sets forth the potential consequence for failure to abide by the Rule:  "Noncompliance.  The Court may deny motions that do not comply with this Rule."

## VI.  The Undisputed Material Facts.

In the MSJ, the Debtor presented a series of fifteen alleged undisputed material facts in a "Statement of Undisputed Material Facts Pursuant to L.B.R 7056" as follows:

8

1.    Defendant, Claire-Marie Bender ("Defendant"), is the individual Debtor in this Chapter 7 case and the owner of Claire-Marie Ficsor DMD, PLLC ("Merchant").

2.    Plaintiff is Kapitus Servicing Inc. ("Plaintiff").

3.    On or about May 8, 2023, the Merchant entered into a Forward Purchase Agreement (the "Agreement") with the Plaintiff, which was personally guaranteed by the Defendant.

4.    In connection with the Agreement, Defendant signed a "Representations and Acknowledgements" document (the "Representations").

5.    The Representations included statements that: (a) neither the Defendant nor the Merchant were a party to any pending litigation; and (b) the funds would be used for a "Business Purpose", payment of salaries and reasonable compensation of officers and employees was not prohibited; only "payment for, or purchase of, any items, goods, materials real property, personal property or services for personal, individual or household use."

6.    Plaintiff admits in its Complaint that its "funding process is truncated from that of a standard financing institution" and that it "relies heavily upon a merchant's representations and warranties made during the application process."

7.    The Merchant made payments to Plaintiff pursuant to the Agreement for over five months, from May 2023 until on or about October 23, 2023.

8.    At the time Defendant signed the Representations and the Agreement on May 8, 2023, she believed all statements made therein to be true and accurate.

9.    At the time Defendant signed the Representations, neither she nor the Merchant was a party to any pending litigation.

10.    At the time Defendant signed the Agreement and Representations, she fully intended to use all funds advanced by Plaintiff for legitimate business purposes as defined in the Agreement, such as working capital and payroll.

11.    All funds advanced by Plaintiff were, in fact, deposited into the Merchant's business account and used for business purposes; no funds were used for Defendant's personal expenses.

12.    Defendant, as the dentistry professional providing necessary services to the business, received a low salary supplemented with modest distributions.

13.    In the Fall of 2023, Merchant's business experienced an unexpected cash flow crisis.

14.     The stop payment order placed in October 2023 was not done with the subjective intent to harm or injure the Plaintiff.

15.     The stop payment order was an attempt to manage the Merchant's limited cash flow to meet other critical and immediate business obligations, specifically employee payroll, in a good-faith effort to keep the business operating.

(Docket No. 34 at 2-3).

The Debtor's presentation of such Alleged Undisputed Facts generally comports with the procedural requirements.  In other words, the Debtor provided "a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried."  L.B.R. 7056-1(a)(3).  And, the Debtor "cit[ed] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" in support of the Alleged Undisputed Facts.  Fed. R. Civ. P. 56(c)(1)(a).  More particularly, the Debtor relied on the Complaint and the Bender Affidavit.

Kapitus admitted Alleged Undisputed Fact Nos. 1, 2, 3, 4, 6, and 7.  (Docket No. 35 at 4-6.)  The Court, therefore, accepts Alleged Undisputed Fact Nos. 1, 2, 3, 4, 6, and 7 as undisputed.

Kapitus disputed the remaining Alleged Undisputed Facts stated by the Debtor.  With respect to Alleged Undisputed Fact No. 5, Kapitus did not dispute the substance (*i.e.*, that the Debtor represented that (a) neither the Defendant nor the Merchant were a party to any pending litigation; and (b) the funds would be used for a "Business Purpose").  Instead, Kapitus only clarified the location of the Debtor's representations and noted that Alleged Undisputed Fact No. 5 was incomplete.  However, for purposes of the MSJ, the Court accepts Alleged Undisputed Fact No. 5 as undisputed.

With respect to Alleged Undisputed Fact Nos. 8 and 9, Kapitus disputed such facts and supported its position with citations to the Wolfson Affidavit, Brown Affidavit, and likely admissible exhibits.  For example, Alleged Undisputed Fact No. 9 asserts that the Debtor and the Merchant were not "a party to any pending litigation" on May 8, 2023.  But, Kapitus provided copies of Court records which appear to establish that the Debtor and the Merchant were defendants in undisclosed pending litigation.  (Docket No. 35-2 at H-K.)  Accordingly, the Court will not accept Alleged Undisputed Fact Nos. 8 and 9 as undisputed.

With respect to Alleged Undisputed Fact Nos. 10 and 11, Kapitus disputed such facts and supported its position with citations to the Wolfson Affidavit, Brown Affidavit, and likely admissible exhibits.  For example, Kapitus provided copies of records from financial institutions which appear to establish some transfers from the Merchant to the Debtor and another entity.  Accordingly, the Court will not accept Alleged Undisputed Fact Nos. 10 and 11 as undisputed.

With respect to Alleged Undisputed Fact Nos. 12-15, Kapitus disputed such facts and asserted that "Kapitus currently cannot present additional facts to properly address this allegation and hereby requests an opportunity to complete discovery in order to be able to do so."  Since discovery was not complete as of the MSJ Response, the Court concludes that it would be imprudent to accept Alleged Undisputed Fact Nos. 12-15 as undisputed, particularly given Kapitus' request under Fed. R. Civ. P. 56(d). Furthermore, Alleged Undisputed Fact Nos. 14 and 15 implicate issues of intent.  For example, the Debtor asserted that her actions were "not done with the subjective intent to harm or injure the Plaintiff."  (Alleged Undisputed Fact No. 14.)  That type of assertion is difficult in the summary judgment context.  Subjective intent to harm or injure is not a "fact" in the classic sense.  Instead, an assessment of subjective intent generally is considered a mixed question of fact and law that the Court will decide after assessing the admissible evidence.  And, the Debtor's assertion (in an affidavit) denying any intent to harm, injure, or defraud is not dispositive and must instead be weighed after consideration of the Debtor's credibility and direct and circumstantial evidence under the totality of the circumstances.  Finally, the "Additional Alleged Facts" set forth below support that the Debtor's intent is a material disputed issue.

In addition to disputing some of the Alleged Undisputed Facts set forth by the Debtor, consistent with L.B.R. 7056-1(b)(4), in the MSJ Response, Kapitus provided a statement of 50 "Additional Facts Which Are Material and Disputed," as follows:

1.      On or about May 1, 2023, Bender applied for commercial financing on behalf of her business, Claire-Marie Ficsor DMD, PLLC d/b/a Windermere Family Dentistry ("Merchant") with Kapitus.

2.      In the Application, Bender represented that her only "outstanding debt" was $1,200,000 and that her largest creditor was the Small Business Administration, and that "[a]ll information provided, directly or indirectly, in connection with this application is true, accurate and complete."

3.      Bender represented in the Application that her company had $950,000 in annual revenue.

4.      Kapitus required Bender to provide bank statements and certain tax records to help corroborate certain of her representations.

5.      On or about May 8, 2023, Bender executed and submitted to Kapitus a document titled "Representations and Acknowledgments – Funding is Contingent Upon Your Completion and Review by Kapitus" (the "Representations").

6.      Among other things, Bender represented the following: i) "Neither my business nor I are in arrears on any business or personal loans or other financial obligations, except as previously disclosed to Kapitus in writing"; ii) "All information that I provided to Kapitus to obtain financing for my business accurately reflects the … financial condition of my business";

11

and iii) "Neither my business nor I are party to any pending litigation that I would expect to have a material impact on my business."

7.  On or about May 8, 2023, Bender executed the [FPA] with Kapitus.

8.  Pursuant to the Agreement, Kapitus purchased $267,036.00 (the "Purchased Amount") of receipts, accounts, contract rights, and other rights to payment arising from or relating to certain payments received by Merchant (collectively, the "Receipts"2) in exchange for a payment of $202,300.00 (the "Purchase Price").

9.  The Purchase Price was not a loan to Merchant. Instead, the [FPA] is a forward purchase of the Receipts from Merchant, subject to certain conditions.

10.  Among these conditions was the requirement that Merchant pay Kapitus 17.0% (the "Specified Percentage") of Merchant's Receipts to Kapitus on a weekly basis until the Purchased Amount was paid in full to Kapitus, subject to a reconciliation between the parties as to the Specified Amount, as defined in the Agreement.

11.  Per the [FPA], in "the event of a breach of [the FPA] the Specified Percentage shall equal 100%."

12.  Thus, if Merchant or Bender were to breach the [FPA], Kapitus had a right to 100% of Merchant's Receipts because Kapitus actually owned such Receipts.

13.  Bender executed a personal guaranty (the "Guaranty"), guaranteeing Merchant's full performance under the [FPA].

14.  In the [FPA], Bender represented, warranted, and covenanted that: i) the information and financial statements provided to Kapitus fairly represented Merchant's "business and financial condition"; ii) Merchant and Bender were "currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed" to Kapitus; iii) Merchant and Bender are not parties to "any pending litigation that is expected to have a material impact" on Merchant or Bender"; iv) Merchant had "paid all taxes due"; v) Merchant would not "block or stop payment" to Kapitus; vi) Merchant was solvent; and vii) that all the information provided by Merchant and Bender to Kapitus "is true, accurate and complete in all respects."

15.  The [FPA] included a Use of Proceeds Certification (the "Use Statement") which limited Merchant to using the funds received from Kapitus for certain business purposes outlined in the Use Statement.

12

16.     Kapitus relied on Merchant and Bender's representations to be true and accurate, and Bender knew that Kapitus was relying on them.

17.     Kapitus followed its typical practices and procedures in considering whether to enter into the [FPA] with Merchant and Bender, including reviewing bank statements and tax records and even performing a background check.

18.     Kapitus is not a standard financing institution.

19.     Kapitus has 19 years of experience in its niche industry and knows what the reasonable person does in the types of transactions in question. Kapitus' due diligence is typical and reasonable for alternative financing institutions such as Kapitus.

20.     There was nothing in the Application, or any other documentation provided to Kapitus by Merchant or Bender, that indicated that there were any misrepresentations or other discrepancies in Merchant's or Bender's representations.

21.     On or about October 23, 2023, without any forewarning to Kapitus, Bender caused a stop payment order to be placed on the account established and mandated under Sections 1.3, 2.6 and 3.1(a)-(b) of the [FPA] to provide payment to Kapitus.

22.     By placing the stop payment order, Bender misappropriated Receipts that were owned by Kapitus by virtue of the [FPA].

23.     Bender made false statements with regard to the warranties and representations she made in the Representations and the [FPA].

24.     Bender was in arrears on business and personal loans at the time she entered into the [FPA] and had never disclosed that fact to Kapitus.

25.     The information Bender provided to Kapitus to obtain financing did not reflect Merchant's accurate financial condition.

26.     At the time they entered into the [FPA], Merchant and Bender were not "currently in compliance with all loans, financing agreements, promissory notes, and/or other obligations of indebtedness, except as disclosed" to Kapitus.

27.     At the time they entered into the [FPA], Merchant and Bender were parties to "pending litigation" that was expected to have a material impact on them.

28.     Merchant had not "paid all taxes due" at time it entered into the [FPA].

29.     Merchant was not solvent at time it entered into the [FPA].

30.     The information provided by Merchant and Bender to Kapitus was not "true, accurate and complete in all respects."

31.     On May 8, 2023, Bender was a defendant in the Sunflower Case.

32.     The Sunflower Case was dismissed on May 30, 2023 in response to a motion to dismiss which had been filed on May 25, 2023.

33.     The complaint in the Sunflower Case alleged that, in 2017 and 2018, Bender's businesses borrowed over $1,745,000 from Sunflower Bank in connection with five separate loans.

34.     That complaint further alleged that, as of November 19, 2020 (the date the complaint was filed), Bender's businesses still owed over $1,460,000 and had defaulted on all five loans.

35.     Bender had personally guaranteed each of those loans and was indebted to Sunflower Bank for the total amount owed by her businesses.

36.     In connection with the Sunflower Case, Bender entered into a stipulation to make monthly payments to Sunflower Bank in the amount of $5,400.

37.     The motion to dismiss in the Sunflower Case states that, "since the parties entered into the Stipulation, some of the obligations have been paid in full and some have not."

38.     The motion went on to say that Sunflower Bank would dismiss the litigation, without prejudice, "allowing Sunflower Bank to pursue its rights and remedies against [Bender] in the event of an *additional* default under the unpaid loan obligations."

39.     Sunflower Bank initiated litigation against Bender on October 24, 2023 due to her continuing defaults on her loan obligations to them.

40.     Kapitus has propounded 24 interrogatories and 18 requests for production of documents on Bender with the intent of discovering, among other things, what Bender used the proceeds of the transaction for, and when they were used.  These requests seek, among other things, information related to: i) litigation in which Bender was a party (Interrogatory No. 4); ii) "every loan or funding arrangement" to which Merchant and Bender were parties (Interrogatory No. 5); iii) Bender's communications with Kapitus (Interrogatory No. 6); the stop payment order that Bender placed (Interrogatory No. 7); iv) the Receipts Kapitus purchased through the [FPA] (Interrogatory Nos. 8-9); Merchant's

14

solvency (Interrogatory No. 15); v) Merchant and Bender's tax liabilities (Interrogatory No. 16); vi) Merchant and Bender's bank and financial statements relevant to their financial condition (Interrogatory No. 20); vii) whether Bender used the "Kapitus funding for personal use" (Interrogatory No. 23); and, viii) whether Bender diverted funds from Merchant and Kapitus (Interrogatory No. 24). Kapitus' requests for production seek documents and other tangible evidence related to the issues raised in the interrogatories and this adversary generally.

41.     At the time Merchant and Bender entered into the [FPA], Bender was apparently engaged in a scheme to falsify retirement withholding and contribution records for employee retirement accounts.

42.     Bender's scheme consisted of withholding funds from Merchant's employees' paychecks — with the expressed purpose of depositing them in Individual Retirement Accounts — but Bender would, instead, keep the funds.

43.     Bender's liability to the Internal Revenue Service for taxes which should have been, but were never, paid on those withheld funds was never disclosed to Kapitus at the time Bender entered into the [FPA].

44.     The proceeds of the [FPA] were used for non-ordinary course expenses, including personal expenses or expenses related to other business(es).

45.     For example, in the month following the funding of the transaction with Kapitus, Merchant transferred $16,000.00 to Bender's personal account in addition to normal payments related to her regular salary.

46.     In 2023, there existed dozens of intercompany transfers between Merchant and Bender's other business, Colorado Snoring and Sleep Apnea Center ("CSSAC"), including a September 6, 2023 transfer of $20,000.  The statement of intercompany transfers only goes back to August 2023 and Kapitus has requested records of any transfers going back to the date of the funding of the [FPA] in its discovery requests and beyond.

47.     These intercompany transfers from Merchant to CSSAC violated the Use Statement and the [FPA].

48.     The known evidence shows that Merchant and Bender were likely insolvent at the time they entered into the [FPA] and the Guaranty.

49.     Merchant and Bender's liabilities were far greater in May 2023 than they disclosed in the Application.

15

50.     Based on proofs of claim in this matter, as of the Petition Date, Bender owed at least the following liabilities: $1,633,013.90 to the SBA; $30,942.16 to Dynaflex; $36,000 to First Pacific Corp; $90,000 to Intuit; $507,859.43 to Sunflower Bank; and student loans totaling $170,085.61. These debts total $2,647,901.10.

(Docket No. 35 a 6-10.)

The Court refers to the foregoing as the "Additional Alleged Facts."  Kapitus' presentation of such alleged Additional Alleged Facts generally comports with the procedural requirements.  In other words, Kapitus provided "a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried."  L.B.R. 7056-1(a)(3).  And, the Debtor "cit[ed] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" in support of the Additional Alleged Facts.  Fed. R. Civ. P. 56(c)(1)(a).  More particularly, the Debtor relied on exhibits and the Wolson Affidavit and Brown Affidavit.  Notably, the Debtor has not disputed any of the foregoing Additional Alleged Facts.  So, the Court accepts them for summary judgment purposes.

## VII.     Kapitus' Remaining Claims and the Parties' Positions.

As discussed above, in the Complaint, Kapitus claimed that the $237,309.59 debt allegedly owed to it by the Debtor pursuant to the Agreements is nondischargeable under Sections 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).  In the Dismissal Order, the Court dismissed the Section 523(a)(2)(A) claim to the extent it was based on the Solvency Statements, Business and Financial Conditions Statements, Arrears Statements, and Pending Litigation Statements; but did not dismiss the Section 523(a)(2)(A) claim to the extent it was based on the Use Statements.  And, the Court dismissed the Section 523(a)(4) claim in its entirety.

**So, at this stage, the claims that remain for adjudication are: (1) the Section 523(a)(2)(A) claim to the extent based on the Use Statements; (2) the Section 523(a)(2)(B) claim; and (3), the Section 523(a)(6) claim.  The Debtor seeks entry of summary judgment on all of the foregoing remaining claims asserted by Kapitus.**

In the MSJ, the Debtor asserts that Kapitus' remaining claim under Section 523(a)(2)(A) fails because, at the time the Debtor made the Use Statements, she fully intended to use all funds advanced by Kapitus for business purposes.  The Debtor asserts that Kapitus cannot succeed in proving all elements required to prevail on its 523(a)(2)(B) claim for two reasons:  (1) because the Pending Litigation Statements and the Use Statements are not statements respecting financial condition such that they can form the basis for a claim under Section 523(a)(2)(B); and (2) because Kapitus' alleged reliance on the any alleged misrepresentations that the Debtor made to Kapitus was objectively unreasonable.  The Debtor also asserts that Kapitus' claim under Section

16

523(a)(6) fails as a matter of law because Kapitus can produce no evidence of a willful and malicious injury to Kapitus.

Kapitus contests the MSJ.  It argues that the Pending Litigation Statements and the Use Statements are statements respecting financial condition that can properly form the basis for a Section 523(a)(2)(B) claim.  Further, Kapitus contends that the Debtor has failed to meet her summary judgment burden to establish that Kapitus' reliance on such statements was not reasonable, arguing that Court must consider Kapitus' business practices, industry standards, and circumstances existing at the time that the Debtor and Kapitus entered into the FPA in evaluating reasonable reliance — and there are material factual disputes.  Kapitus also disputes the Debtor's contention that it cannot show that the Debtor acted with intent to deceive Kapitus (as would be required under both Section 523(a)(2)(A) and (B)).  Though the Debtor has asserted in the Bender Affidavit that she did not intend to deceive Kapitus, Kapitus contends that the Debtor's affidavit does not suffice to establish the absence of a genuine question of fact as to the Debtor's intent.  Instead, Kapitus notes, intent can be inferred from circumstantial evidence or inferences drawn from a course of conduct, based on the totality of the circumstances.  The Court's evaluation of such circumstances, Kapitus argues, is fact-specific and hinges on the credibility of witnesses, such that it cannot be decided on the basis of the documentary evidence presented in support of the MSJ. Finally, Kapitus argues, to the extent that the Court finds that it has not presented facts sufficient to justify its opposition to the MSJ, the Court should exercise its authority under Fed. R. Civ. P. 56(d) either to deny the motion or, alternatively, to defer its consideration of the motion after discovery is completed and Kapitus is given time to present additional materials in support of its opposition.

## VIII.    Applicable Law and Legal Analysis.

### A.    The General Framework for Nondischargeability Determinations.

Section 523(a) nondischargeability claims all require a two-part analysis.  First, "the bankruptcy court must determine the validity of the debt under applicable law . . . ." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (10th Cir. BAP 2016); *see also Lang v. Lang (In re Lang)*, 293 B.R. 501, 513 (10th Cir. BAP 2003) (if the alleged debt is for fraud, "state law of fraud controls with respect to whether fraud has occurred").  This is referred to as the "claim on the debt" component.  *Thompson*, 555 B.R. at 8.  Second, if there is a valid debt, "the bankruptcy court must determine the dischargeability of that debt under Section 523 . . . ."  *Id.*; *see also Lang*, 293 B.R. at 513 ("bankruptcy law controls with respect to the determination of nondischargeability").  This is referred to as the "dischargeability" component.  *Thompson*, 555 B.R. at 8.

The first part of the dischargeability analysis starts with the Court deciding whether there is a valid debt.  *Thompson*, 555 B.R. at 8.  The term "debt" is defined in Section 101(12) as "liability on a claim."  And, under Section 101(5), a "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."  11 U.S.C. § 101(5)(A).  In this dispute, the

17

Debtor does not contest that she owes a debt to Kapitus; instead, she asserts that, as a matter of law, Kapitus cannot establish the dischargeability component of its claims.

**B.      The Remaining Section 523(a)(2)(A) Claim (Based on the Use Statements) Is Not Subject to Summary Judgment.**

In Count I of its Complaint, Kapitus asserts nondischargeability under Section 523(a)(2)(A).  That Section provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

Therefore, in order to establish nondischargeability on grounds of a false representation pursuant to Section 523(a)(2)(A), the plaintiff must prove the following elements by a preponderance of the evidence:

> [1] The debtor made a false representation; [2] the debtor made the representation with the intent to deceive the creditor; [3] the creditor relied on the false representation; [4] the creditor's reliance was [justifiable][5]; and [5] the debtor's representation caused the creditor to sustain a loss.

*Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996) (bracketed numbers added); *see also Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir. 2009) (same, quoting *Young*).  Importantly, per the text of Section 523(a)(2)(A), the false representation must be "other than a statement respecting the debtor's or an insider's financial condition."   11 U.S.C. § 523(a)(2)(A).  *See also Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018) (interpreting statute).

Pursuant to the Court's Dismissal Order, Kapitus' Section 523(a)(2)(A) claim is limited only to the Use Statements.  Now, through the MSJ, the Debtor asserts that it is entitled to judgment in its favor because "the Plaintiff's claim under [Section] 523(a)(2)(A) fails for lack of intent."  (Docket No. 34 at 8.)  The Debtor appears to rely almost exclusively on her own Bender Affidavit in which she asserts that she had no intent to harm, injure, or deceive Kapitus through the Use Statements or otherwise.

---

[5]      In *Young*, 91 F.3d at 1373, the Tenth Circuit states that the reliance must be "reasonable." However, that does not mean "'reasonableness' in the sense of whether an objectively reasonable person would have relied upon the debtor's representation." *Riebesell*, 586 F.3d at 791.  Instead, under *Field v. Mans*, 516 U.S. 59, 74-75 (1995), the reliance must be "justifiable."

Debtor defendants rarely acknowledge intent to deceive in Section 523(a)(2)(A) cases. Accordingly, intent to deceive typically is evaluated based upon circumstantial evidence. "A creditor may prove intent to deceive through direct evidence or a court may infer intent from the totality of the circumstances." *Assoc. Mortg. Corp. v. Weaver (In re Weaver)*, 579 B.R. 865, 891 (Bankr. D. Colo. 2018) (citations omitted). *See also Tobias v. Alvarado (In re Alvarado)*, 608 B.R. 877, 885 (Bankr. W.D. Okla. 2019) (citing *First Nat'l Bank v. Cribbs (In re Cribbs)*, 327 B.R. 668, 673 (10th Cir. BAP June 24, 2005) [hereinafter "*Cribbs I*"], *aff'd* 2006 WL 1875366 (10th Cir. 2006) [hereinafter "*Cribbs II*"]); *Copper v. Lemke (In re Lemke)*, 423 B.R. 917, 922 (10th Cir. BAP 2010); *In re Graham*, 600 B.R. 90 (Bankr. D. Kan. 2019)) ("Because fraudulent intent is rarely admitted by a debtor, courts uniformly recognize it may be established by circumstantial evidence or by inferences drawn from a course of conduct or from the totality of the circumstances."); *DRCK, LLC v. Chong (In re Chong)*, 523 B.R. 236, 243 (Bankr. D. Colo. 2014) ("Intent to deceive can be inferred from the totality of the circumstances.").

An intent to deceive does not require that a debtor acted with a "malignant heart," but can be found where "made with reckless disregard for the truth." *Weaver*, 579 B.R. at 891. *See also Santiago v. Hernandez (In re Hernandez)*, 452 B.R. 709, 721 (Bankr. N.D. Ill. 2011) ("[W]here the debtor knowingly or recklessly makes false representations that he knows or should know will induce another to act, the court can infer an intent to deceive."). Still, a "finding of reckless disregard should be very narrowly interpreted because a misrepresentation is fraudulent only if the maker 'knows or believes the matter is not what he represents it to be.'" *Cribbs I*, 327 B.R. at 673 (citing *Chevy Chase Bank FSB v. Kukuk (In re Kukuk)*, 225 B.R. 778, 787 (10th Cir. BAP 1998)).

The Debtor denies that she intended to deceive when she made the Use Statements in which she committed that the funds received from Kapitus would only "be used in the ordinary course of business [of the Merchant]" and "will be used exclusively for a Business Purpose and no other." Effectively, the Debtor seems to present the Bender Affidavit (denying intent to deceive) as dispositive.

The Court disagrees. The Court must look at the totality of the circumstances. *Weaver*, 579 B.R. at 891. In the MSJ Response, Kapitus contends that the Debtor's intent is disputed. Kapitus has provided evidence, through the Wolfson Affidavit, Brown Affidavit, and exhibits, that suggests that the Debtor may have provided false or inaccurate information at the time that she executed the FPA and the Use Statements. For example, the Debtor represented that the Merchant was solvent (the Solvency Statements) and that she and the Merchant were not the subject of any pending litigation (Pending Litigation Statements). Such representations have been called into question by Kapitus through seemingly competent evidence. (Wolfson Affidavit ¶¶ 29-37 and 44-46; Brown Affidavit ¶¶ 3-20; Exhibits H-L and P-Q.) Kapitus also has provided evidence that all of the funds advanced by Kapitus may not have been spent for a "Business Purpose." (Wolfson Affidavit ¶¶ 38-43; Exhibits P-Q.)

Kapitus argues that the Debtor's foregoing alleged misrepresentations must be considered as part of the "totality of the circumstances" in evaluating the Debtor's intent. The Court agrees that such circumstances are relevant to the Debtor's state of mind. The Court further finds that, under the circumstances of this case, it cannot make an

19

assessment as to the veracity of statements made by the Debtor in the Bender Affidavit, or her credibility, without allowing Kapitus to cross-examine her. *See Alvarado*, 608 B.R. at 885 ("The 'totality of the circumstances inquiry is fact specific and hinges on the credibility of witnesses.'") (quoting *Graham*, 600 B.R. at 95-96). Whilst it is exceedingly difficult for a plaintiff to meet its burden to show intent to deceive with respect to statements about future conduct, Kapitus has shown enough to merit its day in Court and an opportunity to meet its high hurdle at trial. Intent is an issue in material dispute; so, viewing the facts and evidence in the light most favorable to Kapitus (*Morris*, 666 F.3d at 660), summary judgment is not warranted on the remaining Section 523(a)(2)(A) claim based on the Use Statements. *See Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir. 1977) (summary judgment ordinarily is not a proper vehicle for resolution of a dispute concerning state of mind or intent); A. Miller and C. Wright, FEDERAL PRACTICE AND PROCEDURE § 2730 (Thompson Reuters 4th Ed. Supp. 2025) ("Inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ . . . summary judgment often will be an inappropriate means of resolving an issue of this character.").

**C.** **Most of the Section 523(a)(2)(B) Claim Is Not Subject to Summary Judgment; However, the Portion of the Section 523(a)(2)(B) Claim Based on the Use Statements May Not Be Prosecuted Under Section 523(a)(2)(B).**

In Count II of its Complaint, Kapitus asserts nondischargeability under Section 523(a)(2)(B). That Section provides:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — . . .
>
> (B) use of a statement in writing—
>
> (i) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive . . . .

Section 523(a)(2)(B) requires that a plaintiff must prove the following by a preponderance of the evidence:

> (1) The debtor used a statement in writing.

20

(2) The statement was materially false.

(3) The statement concerned the debtor's or an insider's financial condition.

(4) The creditor reasonably relied on the statement; and

(5) The debtor made or published the statement with the intent to deceive the creditor.

*Legacy Bank v. Rund (In re Rund)*, 2026 WL 146894, at *3 (W.D. Okla. Jan. 26, 2026) (citing *Cribbs I*, 327 B.R. at 673); *Bailey v. Turner (In re Turner)*, 358 B.R. 422, 424 (Bankr. N.D. Okla. 2006)) (noting creditor must prove claim under Section 523 by preponderance of the evidence).  In contrast to claims under Section 523(a)(2)(A), which cannot be predicated on a statement respecting the debtor's or an insider's financial condition and need not identify a written statement, a claim under Section 523(a)(2)(B) requires a statement, in writing, respecting the debtor's or an insider's financial condition.  *Lamar, Archer*, 584 U.S. at 715.  As such, subsections 523(a)(2)(A) and (B) are mutually exclusive.  *Land Inv. Club, Inc. v. Lauer (In re Lauer)*, 371 F.3d 406, 413 (8th Cir. 2004).  *See also Fusion Indus., LLC v. Friday (In re Friday)*, 2025 WL 892618, at *8 (Bankr. W.D. Okla. Mar. 21, 2025) (citing *Lauer*).

In Count II of the Complaint, Kapitus effectively asserted the same alleged misrepresentations also initially asserted in Court I of the Complaint: the Solvency Statements, Business and Financial Conditions Statements, Arrears Statements, Pending Litigation Statements, and the Use Statements.

## 1.  <u>The Portion of the Section 523(a)(2)(B) Claim Based on the Use Statements May Not Be Prosecuted Under Section 523(a)(2)(B) and So Must be Dismissed on Summary Judgment.</u>

In the MSJ, the Debtor asserts that summary judgment should be granted on Kapitus' Section 523(a)(2)(B) claim to the extent that the claim is based on the Use Statements and the Pending Litigation Statements because those types of statements allegedly are not statements "respecting the debtor's or an insider's financial condition." (Docket No. 34 at 4-5.)  In the MSJ Response, Kapitus argues the opposite.  It contends that both the Use Statements and the Pending Litigation Statements are statements "respecting the debtor's or an insider's financial condition."  (Docket No. 35 at 12-13.)  Both parties seem to ignore determinations already made by the Court in the Dismissal Order on this exact topic.

In the Dismissal Order, the Court identified the various types of alleged misrepresentations that Kapitus had identified in its Complaint and divided them into the following categories:  Solvency Statements, Business and Financial Condition Statements, Arrears Statements, Pending Litigation Statements, and Use Statements. The Court further engaged in a lengthy analysis and determined which of the foregoing statements qualified as statements "respecting the debtor's or an insider's financial

21

condition" exclusively within the ambit of Section 523(a)(2)(B).  Specifically, the Court determined that the Solvency Statements, Business and Financial Condition Statements, Arrears Statements, and Pending Litigation Statements were all statements in writing "respecting the debtor's or an insider's financial condition" that could only be prosecuted under Section 523(a)(2)(B).  So, in the Dismissal Order, the Court dismissed the Section 523(a)(2)(A) claim to the extent based on the Solvency Statements, Business and Financial Condition Statements, Arrears Statements, and Pending Litigation Statements.  In the Dismissal Order, the Court also determined that the Use Statements were not statements in writing "respecting the debtor's or an insider's financial condition."  The Court, therefore, allowed the Use Statements to remain under Section 523(a)(2)(A) only.  (Docket No. 19 at 13-22.)

The Court will not re-adjudicate what already has been decided as the law of the case.  The Court simply adopts and incorporates the Dismissal Order in its entirety.  Accordingly, the Court again finds that the Use Statements are *not* statements "respecting the debtor's or an insider's financial condition."  So, the portion of the Section 523(a)(2)(B) claim that is based on the Use Statements must be dismissed and summary judgment shall so enter.  However, the Pending Litigation Statements (as well as the Solvency Statements, Business and Financial Condition Statements, and Arrears Statements) are all statements "respecting the debtor's or an insider's financial condition."  So, the Pending Litigation Statements (as well as the Solvency Statements, Business and Financial Condition Statements, and Arrears Statements) may be prosecuted under Section 523(a)(2)(B) and summary judgment is not appropriate with respect to those portions of the Section 523(a)(2)(B) claim based on the Debtor's arguments.

### 2.   The Remaining Section 523(a)(2)(B) Claim Is Not Subject to Summary Judgment.

In the MSJ, the Debtor asserts that the Court should grant summary judgment on Kapitus' Section 523(a)(2)(B) claim because Kapitus "cannot meet the 'reasonable reliance' standard required by Section 523(a)(2)(B)."  (Docket No. 34 at 5-9.)  The Debtor is correct that for Kapitus to succeed on its Section 523(a)(2)(B) claim, Kapitus will have to demonstrate that its reliance on the Solvency Statements, Business and Financial Condition Statements, Arrears Statements, and/or Pending Litigation Statements was *reasonable*.

Reasonable reliance is an objective standard based upon whether a reasonably prudent person (or company) in similar circumstances would have relied on the alleged false representations.  The question of whether a creditor's reliance on a debtor's representation in his or her financial statement is "reasonable" "is a factual determination."  *Leadership Bank, N.A. v. Watson (In re Watson)*, 958 F.2d 977, 978 (10th Cir. 1992).  The Tenth Circuit in *Leadership Bank* instructed:

> "[The] standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon debtor's representations . . .  [T]he reasonableness of a creditor's reliance will be evaluated

according to the particular facts and circumstances present in a given case." . . .  In evaluating a creditor's reliance on a false financial statement, a court may not substitute its judgment for the business judgment of the creditor in deciding to make the loan.

*Leadership Bank*, 958 F.2d at 978 (quoting *First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 679, 681-82, 682 (10th Cir.1987)) (brackets in original).  Indeed, as the Tenth Circuit Bankruptcy Appellate Panel cautioned:

A creditor may not . . . simply bury its head in the sand and assume everything the debtor presents in his financial statement is accurate, but must take reasonable steps, depending on the circumstances, to verify the provided information.

There are situations, however, where a creditor may not be charged with a duty to affirmatively investigate a financial statement.  The Tenth Circuit Court of Appeals has identified several situations where a creditor's reliance on the debtor's representations was deemed reasonable without verifying steps.  These include the following: (1) cases involving "ongoing relationships between the debtor and creditor;" (2) cases where "statements contained no information indicating that further investigation was required;" (3) cases where there is "no indication that further investigation would have uncovered the falsity of the representations;" or (4) cases where "the asserted failure to verify occurred after the loan had been made."

*Rural Enterprises of Okla., Inc. v. Watson (In re Watson),* 294 B.R. 198, 2003 WL 21241702, at *4 (10th Cir. BAP 2003) (unpublished) (quoting *Mullet,* 817 F.2d at 681).

Courts in the Tenth Circuit have identified other relevant considerations to evaluate whether a lender has "reasonably" relied on financial statements.  The Tenth Circuit Bankruptcy Appellate Panel held:

Relevant factors a court must consider include the creditor's standard lending practices, the standard in the creditor's industry, and the surrounding circumstances at the time the debtor applies for credit, including whether there are any "red flags" in the application, whether there was an ongoing business relationship, and whether further investigation would have revealed inaccuracies in the debtor's application.

*Cribbs II*, 2006 WL 1875366, at *4 (citations omitted).  *See also Turner*, 358 B.R. at 426 (similar) (citing *Bank of Commerce v. Smith (In re Smith)*, 278 B.R. 532, 537-38 (Bankr.

N.D. Okla. 2002); *Ins. Co. of N. Am. v. Cohn (In re Cohn),* 54 F.3d 1108, 1117 (3d Cir. 1995); and *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir.1993)).

In *Cribbs II*, the Tenth Circuit generally agreed with the creditor that "absent 'other factors,' a creditor's reliance on a financial statement is reasonable if it follows its own standard lending practices." 2006 WL 1875366, at *4 (citations omitted). The Tenth Circuit, however, qualified its general agreement with that proposition, stating: "[W]e conclude that one of the 'other factors' that might render a creditor's adherence to its own standard lending practices insufficient for purposes of establishing reasonable reliance is a lack of ordinary diligence under the particular facts of the case." *Id.* Thus, a creditor's showing that it strictly adhered to an industry standard may not be enough. The *Cribbs II* Court further explained:

> In requiring a creditor to exercise ordinary diligence under the circumstances of a particular loan application, we do not suggest an affirmative duty to investigate in every circumstance. What constitutes ordinary diligence sufficient to support a finding of reasonable reliance is to be determined according to the particular facts of each case. In some instances, it may not require any investigation at all.

*Id*. at *5.

In the MSJ, the Debtor asserts that it is entitled to summary judgment on the reasonable reliance element because:

> Plaintiff's own Complaint is fatal to its [Section 523(a)(2)(B)]claim. In ¶ 2 of the Complaint, Kapitus admits its "funding process is truncated from that of a standard financial institution" and that it "relies heavily upon a merchant's representations." This is a candid admission of unreasonable reliance.

(Docket No. 34 at 6.)

The Court disagrees with the Debtor. Kapitus' acknowledgement that its "funding process is truncated from that of a standard financial institution" and that it "relies heavily upon a merchant's representations" is not "fatal" or dispositive for the reasonable reliance element of Section 523(a)(B)(2). Instead, it is one factor for the Court to consider, among others. In the MSJ Reply, Kapitus has provided other facts bearing on reasonable reliance. Per Kapitus, it followed its "typical practices and procedures in considering whether to enter into the [FPA] with the Merchant and Bender." (Wolfson Affidavit ¶ 22.) Kapitus requested and reviewed bank statements and tax records. (*Id.* ¶ 22*;* Ex. D.*)* It also performed a background check. (*Id.* ¶ 22, Ex. R.) And, Kapitus also asserts that it relied upon financial information provided by the Debtor. Meanwhile, neither the Debtor nor Kapitus has provided the Court with expert testimony regarding industry practices.

Ultimately, the Court must view the facts and the evidence in the light most favorable to Kapitus. *Morris*, 666 F.3d at 660. And, "[w]hen the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper." *C.L. Frates & Co.*, 728 F.3d at 1189. Both the Debtor and Kapitus have provided evidence which is not dispositive. Based on the limited evidence presented to the Court, a rational factfinder might find that Kapitus' reliance was either reasonable or not reasonable. So, summary judgment is not warranted. Ultimately, the Court will need to assess all the evidence at trial under the totality of the circumstances and applicable law to determine the reasonableness of Kapitus' reliance. So, the Court denies summary judgment on the Section 523(a)(2)(B) claim.

**D.      The Section 523(a)(6) Claim Is Not Subject to Summary Judgment.**

In Count IV of the Complaint, Kapitus seeks to establish nondischargeability pursuant to Section 523(a)(6), which makes nondischargeable any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." As the text of the statute makes plain, nondischargeability under Section 523(a)(6) requires both a "willful injury" and a "malicious injury." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both* [willful and malicious injury], an objection to discharge under [Section 523(a)(6)] must fail.") (italics in original); *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. Jul. 12, 2022) (unpublished) ("to determine nondischargeability under § 523(a)(6) we must review whether Mr. Bloom caused both a willful and malicious injury"). Stated differently, Section 523(a)(6) "requires proof of two distinct elements — the injury must be both 'willful' and 'malicious.' Analyzing and applying 'willful' *and* 'malicious' separately is the better approach." *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (10th Cir. BAP 2020) (emphasis in original).

To establish a willful injury, a creditor may use "direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or . . . indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur." *Smith*, 618 B.R. at 912 (citations omitted). *See also Moore,* 357 F.3d at 1129 ("to constitute a willful act under § 523(a)(6), the debtor must 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it'") (brackets and ellipses in original); *Cocoma v. Nigam (In re Nigam)*, 780 Fed. Appx. 559, 563 (10th Cir. 2019) (unpublished table decision) (reaffirming *Moore* formulation of willful injury); *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, 2000 WL 1275614, at *3 (10th Cir. 2020) (unpublished) ("§ 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur.") It is a subjective standard. *Smith*, 618 B.R. at 912.

The standard for "malicious" injury is different than "willful" injury, however.

> [M]alicious injury requires "evidence of the debtor's motives."
> *In re Smith*, 618 B.R. 901, 919 (B.A.P. 10th Cir. 2020)
> (quotation marks omitted). To be malicious, the debtor must
> have "acted with a culpable state of mind vis-à-vis the actual

25

> injury caused the creditor."  *Id.* (quotation marks omitted).
> The malicious injury requires that the action be "wrongful
> and without just cause or excuse."  *Id.*

*Bloom*, 2022 WL 2679049, at *7.  *See also Smith*, 618 B.R. at 919.  The Tenth Circuit also explained:

> [P]ersonal animus is not a requirement for malicious injury.
> *Smith*, 618 B.R. at 919 (describing the requirements for
> malicious injury); *see also Ball v. A.O. Smith Corp.*, 451 F.3d
> 66, 69 (2d Cir. 2006) (explaining malicious injury means
> "wrongful and without just cause or excuse, even in the
> absence of personal hatred, spite, or ill-will (quoting *In re
> Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)).

*Bloom*, 2022 WL 2679049, at *7.  So, malice can be shown if the injury was wrongful and inflicted "without just cause or excuse."  *Wagner v Wagner (In re Wagner)*, 492 B.R. at 55 (emphasis omitted); *Steward Software Co., LLC v. Kopcho (In re Kopcho)*, 2014 WL 3933657, at *6 (Bankr. D. Colo. Aug. 12, 2014) (same).  In assessing the presence or absence of "malicious injury," the totality of the circumstances must be examined.  *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993) ("all the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind vis-a-vis the actual injury caused the creditor" under Section 523(a)(6)); *Smith*, 618 B.R. at 919-20 (quoting *Pasek*'s "all the surrounding circumstances" language; and examining "the totality of the circumstances . . . to determine if a wrongful state of mind was present" when the defendant caused the injury to the plaintiff).

An intentional breach of contract is not enough to support a claim under Section 523(a)(6) unless the debtor's conduct also gives rise to an independent tort.  *See, e.g., Wish Acquisition, LLC v. Salvino (In re Salvino)*, 373 B.R. 578, 588-89 (Bankr. N.D. Ill. 2007), *aff'd*, 2008 WL 182241 at *3-4 (N.D. Ill. 2008).  Conduct is tortious for purposes of § 523(a)(6) if it constitutes a tort under state law.  *See, e.g., Oakland Ridge Homeowners Assoc. v. Braverman (In re Braverman)*, 463 B.R. 115, 119-121 (Bankr. N.D. Ill. 2011) (dismissing Section 523(a)(6) claim upon finding plaintiff had alleged only breach of contract, not a tort); *JB Constr., Inc. v. King (In re King)*, 403 B.R. 86, 93 (Bankr. D. Idaho 2009) (noting that in order to be nondischargeable under Section 523(a)(6), conduct giving rise to debt must be tortious).

The Debtor argues that Kapitus' Section 523(a)(6) claim is nothing more than claim for breach of contract "bootstrapped" to a nondischargeability claim.  Specifically, though the Debtor acknowledges that she breached her duties under the FPA by stopping payment of the Receivables to Kapitus, the Debtor argues that she did not do so out of malice or with intent to harm Kapitus, but rather that she did so by necessity, in order to "manage the Merchant's limited cash flow to meet other critical and immediate business obligations . . . to keep the business operating."  (MSJ at 10; Bender Aff. ¶ 9).  The Debtor notes that this Court has stated in another case, *Everest Bus. Funding v. Easdon (In re Easdon)*,  Adv. Pro. No. 23-1154 TBM (Docket No. 11 at 18) (Bankr. D.

Colo. Jan. 3, 2024) (slip op.),[6] that "Section 523(a)(6) generally relates to torts and not to contracts," and argues that, to the extent that Kapitus has made tort-like allegations in an effort to support its Section 523(a)(6) claim, such allegations are too threadbare to support Kapitus' claim and do not suffice to plead an independent tort.

Kapitus disagrees that its claim is just a dressed-up breach of contract claim, arguing that the Debtor willfully took Receivables which Kapitus owned and converted them for her own use, and that she knew that, by doing so, she would cause Kapitus harm. As Kapitus notes in the MSJ Response, the Debtor "treats this issue as it were subject to a motion to dismiss."[7] (Docket No. 35 at 18.) However, the Court's task at this summary judgment stage is not to test the sufficiency of the allegations in the Complaint, but rather to determine whether the Debtor has demonstrated the absence of a dispute of material fact such that Kapitus cannot at trial establish the elements of its claim.

In her MSJ, the Debtor attests:

---

[6]   The Court was not able to locate the opinion at the Westlaw citation provided by the Debtor in the MSJ.

[7]   The Court agrees with Kapitus' assessment of the Debtor's argument in the MSJ, and further disagrees with the Debtor's suggestion that Kapitus' pleading is so woefully deficient that it fails on its face to state a claim under Section 523(a)(6). In the Complaint, Kapitus alleges that "[o]n or about October 23, 2023, [the Debtor] caused a stop payment order to be placed on the Account." (Docket No. 1 ¶ 25.) Kapitus also alleges that "beginning in October 2023, [the Debtor] specifically shut Kapitus out from benefitting from or receiving any of the [Receivables] or other assets of Merchant when she placed a stop payment order on the Account. (Docket No. 1 ¶ 55.) Kapitus further asserts that "Bender used the funds received and the [Receipts] without explanation, reason or purpose relating to Merchant's business, and failed to use the funds for business purposes. . . ." and that "Bender used her power as owner of Merchant for the purpose of obtaining a preference or advantage to herself." (Docket No. 1 ¶¶ 57 and 59.) Though the Debtor agreed that Merchant "would collect and deposit all of its [Receipts] into the Account and provided irrevocable authorization to Kapitus to make its ACH debits of its percentage of the [Receipts] out of the Account" the Debtor "failed to fund, and then placed a stop payment order on, the Account, despite continuing to operate Merchant and collecting the [Receipts]." (Docket No. 1 ¶ 61.) Even after the Debtor stopped payment to Kapitus, Kapitus asserts, the Debtor "failed to fund the designated Account, resulting in further instances of denial for insufficient funds." (Docket No. 1 ¶ 62.) Kapitus also alleges that the Debtor "shut Kapitus out from accessing and debiting its purchased [Receipts] as they were collected and, upon information and belief, used those [Receipts] for her own and Merchant's benefit." (Docket No. 1 ¶ 63.) And, Kapitus alleges that the Debtor acted willfully and maliciously in doing so. (Docket No. 1 ¶ 72.)

The Court, reading the Complaint liberally, views such assertions as sufficient to state the elements of a claim for conversion. *See Central N.Y. Chapter Nat'l RR Historical Soc'y Inc. v. Brandt (In San Luis & Rio Grande RR, Inc.)*, 2022 WL 20726038 at *3-4 (Bankr. D. Colo. Dec. 15, 2022) (discussing case law and finding that elements of claim for conversion are: (i) a defendant has exercised dominion or control over property; (ii) that property belonged to [the plaintiff]; (iii) the defendant's exercise of control was unauthorized; (iv) [the plaintiff] demanded return of the property; and (v) the defendant refused to return it). But even if such allegations do not suffice to state a claim for any particular independent tort, that is not the end of the matter. To state a claim under Section 523(a)(6), Kapitus need only allege facts sufficient to give rise to an inference that the Debtor caused both a willful and malicious injury to Kapitus or its property. Kapitus has pleaded sufficient facts to support a claim that the Debtor wrongfully and intentionally harmed the Debtor. Whether Kapitus can offer evidence at trial to prove all elements of its claim remains to be seen.

> The stop payment order placed on or about October 23, 2023, (Complaint, ¶ 25) was not done with malice and with any intent to cause harm or injure the Plaintiff. It was a business decision made under financial distress in an attempt to manage the Merchant's limited cash flow to meet other critical and immediate business obligations, specifically employee payroll, and to try to keep the business operating.

The Debtor's conclusory averments do not dispositively show that the Debtor did not wish to cause the consequences of her act or believe that harm was substantially certain to result from it, *see Moore*, 357 F.3d at 1129, nor do they demonstrate that the Debtor did not, through her wrongful actions, inflict an injury without just cause or excuse. *See Bloom,* 2022 WL 2679049, at *7; *Wagner*, 492 B.R. at 55 (emphasis omitted); *Kopcho*, 2014 WL 3933657, at *6 (Bankr. D. Colo. Aug. 12, 2014) (same). Indeed, a factfinder must assess Debtor's credibility with respect to such averments, and other factors, as part of a totality of the circumstances analysis.

Generally, it is difficult for plaintiffs to prevail on Section 523(a)(6) claims. But viewing the evidence in the light most favorable to Kapitus, there are material disputes precluding the entry of summary judgment on the Count IV claim. The issue of "willful and malicious injury" must be resolved at trial. *See Schmidt*, 555 F.2d at 37 (summary judgment ordinarily is not a proper vehicle for the court to resolve a dispute concerning state of mind and intent). Accordingly, the Court denies summary judgment on the Section 523(a)(6) claim.

## IX. <u>Conclusion and Orders</u>.

For the reasons set forth above, the Court:

ORDERS that the MSJ is DENIED; except that the Court enters summary judgment in favor of the Debtor and against Kapitus dismissing the portion of the Section 523(a)(2)(B) based on the Use Statements because the Use Statements are not actionable under Section 523(a)(2)(B); and

FURTHER ORDERS that the two-day trial on Kapitus' claims under Section 523(a)(2)(A) (with respect to the Use Statements only), Section 523(a)(2)(B) (with respect to the Solvency Statements, Business and Financial Conditions Statements, Arrears Statements, and Pending Litigation Statements only), and Section 523(a)(6) will proceed as scheduled, commencing on **Tuesday, May 5, 2026, at 9:00 a.m.** The final pretrial conference set for **Tuesday, April 28, 2026, at 10:00 a.m.,** will also proceed as scheduled. All deadlines set forth in the "Scheduling Order under Fed. R. Civ. P. 16(b) and Fed. R. Bankr. P. 7016 remain in full force and effect.

DATED this 18th day of March, 2026.

BY THE COURT:

_Thomas B. McNamara_
Thomas B. McNamara
United States Bankruptcy Judge